You're all set, Justice Smith. All right, the case is People v. Cornelius Brown, 221820. You have before you Justice Aurelia Puchinsky, Justice Terry Levin, and myself, Justice James Fitzgerald Smith. Our basic procedure is to allow you 15 or so minutes to make your presentation. We will not interfere unless you get totally off the point. Then after the 15 minutes, we'll ask you questions, and then the same for the appellee, and then the closing. And with that, you may start, Appellant. Chris Bendick May it please the Court, good afternoon, Your Honor's Counsel. My name is Chris Bendick from the Office of the State Health Defender, and I represent the appellant, Cornelius Brown. Cornelius Brown's attorneys failed him. Trial counsel provided deficient performance by failing to investigate Rudolph Griffin and Charles Starnes. Griffin and Starnes could have testified as to the decedent's shooting at Griffin a week before the events of the instant case. That deficient performance undercuts confidence in the trial court's outcome, where it left Brown's justified use of forced defense under-supported and caused the trial court not to allow the jury to be instructed on self-defense or second-degree murder. Unfortunately, post-conviction counsel also failed Brown by providing unreasonable assistance. PC counsel provided that unreasonable assistance when she failed to subpoena Starnes for the third-stage evidentiary hearing or asked for a continuance for his presence. This was especially crucial where Griffin had died a few years earlier. In other areas where PC counsel was generally confused about Brown's petition and the procedural history of the case, PC counsel's unreasonable assistance prejudiced Brown as the circuit court dismissed his petition in part due to the lack of Starnes' presence at the hearing. Whether for a new trial or a new third-stage hearing with new counsel, remand should occur. Starting with trial counsel's ineffective assistance, it is undisputed that trial counsel failed to investigate or call Rudolph Griffin or Charles Starnes as witnesses at trial. In his sworn affidavit, Griffin appeared he was outside the marquee room on December 5, 2005, when Jonathan Davis, the decedent in the December 12th shooting, approached Griffin and they argued. Brown, Cornelius Brown, pulled up his van, used his horn, and told Griffin to get into the van, which he did. They drove around the block so Griffin could cool off. Brown's van returned to the corner by the marquee room and Griffin was getting out of the van when Jonathan Davis started shooting at him, blowing out the passenger window of the van. Griffin said he and Brown knew of Davis's reputation of shooting at people and possessing a gun on him most all the time. And at the evidentiary hearing, public defender employees testified and confirmed the contents of Griffin's affidavit were what he would have testified to had he not died three months prior to this hearing. In Starnes' affidavit, which corroborated Griffin's affidavit, he swore that he saw Brown driving down Madison Street on December 5, 2005, and saw Davis exit a gangway and shoot out Brown's van window. And Starnes spoke with Brown a few days later about the incident. Cornelius Brown's affidavit and evidentiary hearing described the same December shooting and that he told counsel before trial about Griffin's and Starnes' proposed testimony and on how Brown, Cornelius's spouse corroborated that she had informed counsel about this van shooting and Griffin. The state does not contest on appeal that if trial counsel failed to investigate and call Griffin and Starnes as witnesses, that counsel provided deficient performance and nor could the state do that because Clay's law is clear on that subject. Instead, the state asserts trial counsel provided credible testimony at this third stage hearing that he was never given Griffin's and Starnes' names by Brown, either Cornelius or Angel. The pretrial record rebuts counsel's evidentiary hearing testimony on the subject. On August 15, 2007, during the pretrial comments, trial counsel explained they had not yet filed an answer to discovery, but that a self-defense would be initiated in this particular case. I'm trying to locate an additional witness. Less than a month later, he filed his answer discovery on September 12, and on that answer discovery, it listed A-minus and B-minus as two potential witnesses. At the evidentiary hearing in 2023, the state failed to present any evidence to support trial counsel's testimony at that hearing that it was his routine practice on answers of discovery to list A-minus or B-minus when he did not have a specific name of a witness from his client. The state's claim that we're trying to shift the burden on appeal is frivolous. The lack of objective support for trial counsel's typical practice claim, of course, can be considered in determining whether the circuit court erred in finding trial counsel's explanation credible. Additionally, in September of 2007, on that same day he filed the answer, trial counsel told the Honorable Judge Fox that besides those two witnesses on the answer discovery that, quote, potentially there's one name that I may supplement to that. Further, trial counsel's evidentiary hearing testimony conceded Brown gave him the names of, quote, potential witnesses, plural. Thus, not just the state's witness, Michael Hall, who trial counsel admitted would be appearing on the state's subpoena, and so there was no need to include that on the answer discovery. Trial counsel's credibility is also questionable, given his April 2006 comments to Judge Fox, essentially misinforming the Honorable Judge Fox about police reports that were in the clear possession of Angel Brown in court. You know, the state pointed this out that Angel Brown was in possession of discovery. The trial court called trial counsel out on this, and what did trial counsel said? Oh, the documents weren't given to Of course they were, and Judge Fox rightly castigated trial counsel for giving discovery to a non-party. His brazen violation, trial counsel's brazen violation of discovery rules, and then lying to Judge Fox about it unquestionably undercuts his veracity for telling the truth when in court. Trial counsel's deficient performance in failing to investigate Griffin and Starnes and call them as witnesses prejudiced Brown and undercuts confidence in the jury's verdict. As this court already found in its Rule 23 order from 2014, the value of Griffin's and Starnes' testimony to Brown's request for, at a minimum, a second degree murder instruction is clear. Had counsel interviewed them, their testimony could have provided the evidence necessary to entitle Brown to such an instruction. The circuit court here simply got it wrong that this court determined that the evidence did not support a second degree instruction. I think the circuit court was confused and referred back to the direct appeal decision here, but of course on direct appeal, we were not aware of Griffin and Starnes, and so as this court rightly held in 2014, if Griffin and Starnes testified as to what they appeared to, a second degree murder instruction would of course been appropriate in this case. Additionally, the circuit court simply got it wrong that Brown's testimony that he had no problems with and was friendly with Davis somehow demonstrates that the December 5th events just did not occur. Again, Brown testified that Davis was, quote, sometimey. Sometimes, you know, he's a violent person. Brown also knew that Davis carried a gun, and on December 5th, Davis was not targeting Brown and not having a confrontation with Brown, but was instead targeting Griffin, who he had just had a fight with mere moments ago. Thus, Brown and Davis could be friends, but at the same time, Brown was aware of Davis's violent disposition, and this would support a second degree murder instruction. Finally, the circuit court got it wrong regarding Brown being the initial aggressor on December 12th. There's clear testimony from Percy Starman and Michael Hall and Cornelius Brown that it was Michael Hall that started the fight with Davis the first time. Davis and Brown left. They returned, and Michael Hall again instigated another fight with Davis, and it was only when Cornelius Brown tried to stop the fight between Hall and Davis that then Davis retorted at Brown, and then their mutual combat as pushing each other, fingers getting pointed at each other's head and pushing each other like that, pushing of the head, occurred. It is unclear from the state's brief why prejudice was not shown by a preponderance or why this jury's verdict is insulated from trial counsel's deficient performance. Cornelius Brown has demonstrated by a preponderance that trial counsel provided that deficient performance that prejudiced Brown. To ensure a man is not serving five decades in prison where credible evidence exists to support lesser mitigated offense instructions, but where the judge and jury never heard that, remand for a new trial should occur. But even if this court does not remand the case for a new trial, this court should still remand it for a new third stage evidentiary hearing with new counsel to ensure reasonable assistance is provided to Brown as required by case law. At the third stage, post-conviction counsel is expected to present the petitioner's claims, argue the merits of the claim, and use the evidentiary hearing as an opportunity to develop the record. PC counsel's failure to subpoena Starnes or ask for a continuance to obtain his presence was the epitome of unreasonable assistance. There's no indication on the record that, unlike Griffin, who had died, as we know from a death certificate, that Starnes was no longer living. There's no indication that Starnes was no longer willing to testify to the contents of that affidavit, as we know from Jim Jacobs' phone call with him, the prior post-conviction counsel. And PC counsel had an ethical duty to not present false claims if she learned otherwise. Thus, by her proceeding on the Starnes-based claim, we can conclude that counsel did not learn anything that would ethically prevent her from presenting it. PC counsel's inaction warrants remand alone, but PC counsel's utter failure to get Starnes into court or at least make a sufficient record as to why Starnes was not being called as a witness at the evidentiary hearing. PC counsel was also routinely confused about the procedural history of Brown's case. And I'll rest on my brief as to all those areas that she was just, was not aware as to what was going on in the case both before and what she was even doing. When the Illinois Supreme Court, while the Illinois Supreme Court has not specifically held whether a petitioner needs to demonstrate prejudice from unreasonable assistance occurring at the third stage, that prejudice requirement from this court is palpable here if Brown does need to make that showing. The circuit court clearly said Brown has failed to make an adequate reason for Starnes' absence at the hearing. As a result, the affidavits will be given little weight in making a final determination on the merits of this claim. Coupled with her unfamiliarity with the record and her abject failure to secure Starnes' presence at the hearing or at least make a record as her having tried to subpoena him shows unreasonable assistance that impacted Brown's case to a degree that necessitates remand for further proceedings and the appointment of new counsel. And your honors, at this point, I do rest on my argument. We ask that this court reverse the circuit court's denial of its post-conviction petition to remand the case for a new trial. And in the alternative, we ask for remand for a new evidentiary hearing with the appointment of new counsel. No questions for me. No questions. I have a question. Mr. Bendick, you've talked about two witnesses, Griffin and Starnes, who really aren't saying anything about the night-in question of the crime. They're talking about the incident with the car windows being shut out. But there was an eyewitness spearman to the actual shooting. And it seems to me that with this eyewitness, the jury had every reason to believe or not believe the eyewitness. And I don't see how learning about shooting out a car window a week earlier was going to change the fact that the gun. Right, your honor. Spearman, after having his discussion with Cornelius Brown, and after Brown and Hall returned to the scene, and while Hall and Davis were fighting, Spearman told Brown, hey, I don't want to, you know, I'm out of here. And he started walking away. And then he turned around and saw a shot fired. However, this December 5th shooting would go to the state of the mind of Cornelius Brown. And of course, for second degree murder instruction, and for the slight evidence that is necessary under Illinois Supreme Court precedent, in order to get a second degree murder instruction, in this instance, we just have to demonstrate that there's slight evidence as to the subjective belief, whether it's reasonable or unreasonable in this case, there was a subjective belief and Cornelius testified that he was afraid for his life as this court held in 2014. And its decision that a second degree murder instruction had the jury learned of the December 5th shooting through Starnes's and through Griffin's appearance would have allowed the trial court and the trial court would have had to, by case law, instruct the jury on at least second degree murder. Our contention is that they would have also received, should have also received the justified use of force for in total. However, at a minimum, a second degree murder instruction would have had to have been given. And that, of course, undercuts confidence in the outcome here, where they weren't given it. The judge denied that request and the jury was not allowed to consider any sort of justified use of force defense by Cornelius. So we have demonstrated that that December 5th shooting would have affected the outcome of the trial and necessitates a new trial here, Your Honor. Thank you. Any further questions? Okay, State, you may proceed. Thank you, Your Honor. May it please the court, I am Brenda Gibbs, Assistant State's Attorney on behalf of the people. The dismissal of defendant's post-conviction petition after the hearing was proper because defendant failed to demonstrate by a preponderance of the evidence that trial counsel provided in effective assistance. Specifically, he did not establish that counsel's performance fell below an objective standard of reasonableness by virtue of not investigating Griffin and Starnes. And he did not show that the outcome of the trial would have been different if counsel had investigated and presented Griffin and Starnes as witnesses. Counsel cannot be deemed ineffective for failing to investigate witnesses that he did not know existed. So the issue of whether trial counsel's performance fell below the standard of reasonableness turned on whether trial counsel was aware of Griffin and Starnes before trial. At the hearing, defendant testified that he told counsel about Griffin and Starnes at the incident in which Davis shot at defendant's van. However, after considering defendant's petition, the affidavits, and the testimony presented at the hearing, the circuit court found the defendant was not a reliable source of accurate information because he alleged certain facts at certain hearings and times and omitted certain facts at other hearings and times. This finding was fully supported by the record, which shows that defendant indeed provided different facts and versions of the events during different parts of the case. He contradicted himself in the course of describing an event, multiple events, and he contradicted other witnesses' statements and versions of the events. I've detailed some of these discrepancies in my brief, and the record as a whole shows this. For example, when he was investigated by police, he said he didn't shoot Cornelius, didn't talk to him, but he heard the shooting. And then as he was discussing that with the police, he said, oh, I did see the shooting, but I didn't see who got shot. He later testified at trial that he did, that he was there, he did argue with Cornelius, and he did shoot him. In his appeal, I'm sorry, in his post-conviction petition, he then alleged that this was an accidental shooting. And then in his appeal following that, he's arguing that this was mutual combat prompted by serious provocation. Now, that was an argument presented by his defense counsel, but in the lower proceedings, he gave three different versions of the events. Similarly, in his petition, he indicated that he told counsel that there was an incident with Davis and Griffin and Starnes, and he was not aware of the basis of that incident, so counsel would have to ask them. He then averted his affidavit and testified at trial, oh, I was driving the van, and he shot at the van while Griffin was in the passenger seat. And that is what Griffin and Starnes presented in their affidavits. So he's holding back information at some times, he's offering it at other times, and he's contradicting himself between himself and his affidavits and his witnesses. Now, defendant's wife also testified at the hearing that she told counsel about Griffin, but the court found that she too was not a reliable source of information. In arriving at that conclusion, the court noted, and again, the record reflects, that there were contradictions within her affidavit, there were contradictions between her affidavit and defendant's petition, there were contradictions between her testimony and defendant's testimony. And the record also shows that there were contradictions between her affidavit and Griffin and Starnes' affidavits, and contradictions between her affidavit and her testimony, and within her testimony. Now, again, in our brief, we describe these contradictions. One of them was the circumstances of the incident, where her information and her representation about observing the van did not jive with what the other witnesses were saying. In her affidavit, she said seven times that the windows were shot out. And she testified at trial that she told counsel, the windows were shot out. And when she was pinned down and asked, which window, she said, oh, the front passenger window. Well, Griffin and Starnes said it was the back passenger window, and defendant said it was the windows. Windows of a vehicle are not fungible. If you're driving and someone shoots out your window, I would submit that you're going to remember which window that was. If it's one event, and they're all observing this and experiencing it, it should be consistent. Either it was the back, or it was the front, or it was several. She said, oh, I got one window repaired. Well, would you repair one and leave the rest broken? Also, if Griffin was in the front passenger seat, and the shot came through the front passenger window, that's a fairly traumatic event. So what his wife is saying is that this event of the shooting was so traumatic, it was the front window. That's what she's suggesting. And Starnes and Griffin know it was the back window. Defendant didn't even say which window it was. And again, this matters, because if this event actually happened, this should be consistent. Other inconsistencies that were presented between Ms. Brown and the witnesses were her testimony versus defendant's testimony. He testified that in 2005, she was a CPA and she was a homemaker. I'm sorry, she was a CPA and a caretaker, and she used the van for her business. She testified she was a homemaker, but then she said she got the van repaired right away because she had to go to work. Well, she's a homemaker and her work's at home. Where is she going? Defendant should know where his wife works, and she should know where she works. So why is there this disagreement? The people called defense counsel as a witness and expressly asked him if defendant or Ms. Brown gave him a name of any witnesses. And he said, yes. And the people said, what names? And he said, the only name I recall is Michael Brown. So he did not say he was given the names of multiple individuals. And I would refer this court to the record to confirm that. That is on pages, bear with me, 1232 and 1233. He did not concede that he was told about multiple witnesses. He said he was given the name of Michael Hall, and Ms. Brown helped him contact Hall. He also testified that he did not recall being informed by defendant or his wife of an incident in which Davis shot at defendant's van. Counsel acknowledged that in his answer to discovery, he placed an A and a B with blank spaces in the space for witnesses, and he explained to the court his reason for doing so. He also discussed on the course inquiry, his understanding of Lynch testimony and its potential value to a theory of self-defense or second-degree murder, and the course he would have taken if he had received such information about witnesses who could have assisted in advancing those theories. Now, after considering the testimony and evidence at the hearing, the circuit court noted that defense counsel stated numerous times that he was not aware of the existence of Griffin and Starnes, was never informed of them by defendant or Brown, and would have interviewed and potentially called them to testify as part of a theory of self-defense if he had known about them. The court found that filing an answer with an A and a B with blank spaces was unconventional, but it was not concrete evidence that counsel was informed of and or aware of Griffin and Starnes as witnesses. The court credited counsel's testimony over that of defendant and his wife and concluded that counsel was not objectively unreasonable in failing to call them as witnesses because neither of their testimony, neither defendant nor his wife, nor counsel's answer to discovery established that the counsel was aware of their existence. There is no basis to conclude that this determination was manifestly erroneous. When the record is considered and counsel's statements are considered again, he did not say that he was given multiple names, and at the time he filed that answer to discovery, he said, I'm looking for witnesses. He didn't say the names of anyone for whom he was searching or persons he might hope to find. If I could have just a moment. Now, in addition to not showing that counsel was objectively unreasonable for not investigating or calling Griffin and Starnes, defendant did not demonstrate that the outcome of his trial would have been different if they had been called and testified. Griffin and Starnes are vermins, did not speak to the events and circumstances of Davis's murder and their description of that prior incident in which Davis shot at Griffin while Griffin was a passenger in defendant's van would not have altered the circumstances or the interpretation of the circumstances surrounding defendant's encounter with and shooting Davis. What their testimony, Griffin and Starnes would have established is that one week after defendant only personally observed Davis argue with defendant's friend Griffin outside the marquee club and shoot out the window of defendant's van after Griffin got in, defendant went back to that club with a loaded cocked gun in his pocket. When he was there, he observed Davis and defendant's friend Hall arguing and cursing at each other in front of that club, and he thought nothing of it. And contrary to what counsel said was a fight, this was not a fight, this was an argument. Everyone testified that it was verbal, they were yelling and cursing, there was no touching between Hall and Davis. Now defendant involved himself in that argument and began arguing with Davis, and he told Davis, don't be here when I come back, and he got into a vehicle with Hall and he left. Now almost an hour later, he came back with that loaded cocked gun in his pocket, and he approached Davis, and he argued with Davis again, and he continued arguing with Davis despite Davis repeatedly telling him to get out of his face. He continued arguing and responded in kind when Davis put his hands and our fingers in defendant's face, and they did that back and forth, and defendant kept going back and forth with him. Defendant continued arguing and responded in kind when Davis put his finger to defendant's head during that argument. And defendant's testimony indicates that that occurred one time, one touch, one finger, one back and forth of that. Defendant never saw Davis with a weapon on that occasion. Now defendant's actions show, and he testified, that he was not afraid to approach Davis, nor argue with him, nor ignore his instruction to get out of his face, and was not afraid when he and Davis were raising their back and forth in each other's faces, and was not injured or hurt when he was touched by Davis's finger. It is patently absurd to believe that when Davis stopped putting his hands and finger in defendant's face, and lowered his empty, unclenched hands to either side of the center of his waistline, and leaned his upper body toward defendant, defendant, as a result of his knowledge of that prior incident, feared for his life. It is also absurd to believe that defendant continued to fear for his life after Davis, still unarmed, raised his hands to shield his face from a gun defendant pointed at him and screamed. This is especially true when the evidence showed that defendant said, F this shit. And I'm quoting the record, your honors, I apologize. But that's what he said before he fired the gun. And then he fled the scene, entered an apartment building, and kicked on and kicked in doors to evade capture, lied to police about his involvement in the incident, and celebrated the idea of only facing a charge of aggravated battery and a sentence of two to five years. And that celebration was caught on camera. And defendant acknowledged that's what he was doing. Griffin and Starnes testimony would not have altered those circumstances, nor defendants actions and statements before, during or after that incident, nor his testimony about the incident. And their statements would not have provided a basis for defendants fear, nor provided a way to measure his level of fear for his life. When he raised the gun and pulled the trigger. Defendant actually identified his level of fear during his testimony. On page 621 and 622 of the record, the ASA asked defendant, despite whatever argument you had seen him in in the past, you weren't afraid to argue with him. And when he said get out of my face, you didn't get out of his face. You kept arguing, right? And defendant said, yeah, I kept arguing. And the ASA said, because you weren't afraid of him, right? Defendant said, I was afraid, but I'm not going to let nobody see that. So that statement shows that defendants stated fear of Davis, his fear for his life was not as great as his desire to not let anyone see that he was afraid. Based on that statement and defendants actions, defendant was not trying to his life when he shot Davis. He was trying to preserve his reputation by ending the argument without letting anyone see that he was afraid. That is not a justification for murder. And it's not a mitigating circumstance of murder. There is no instruction for defensive reputation. Griffin and Starnes testimony also would not have transformed the circumstances such that anyone would believe that Davis was the aggressor. Davis was minding his business outside of the Marquis Club. Defendant approached him. Defendant began to argue. Defendant did not go away when Davis said, stay out of my business, get out of my face. Defendant was trying, or I'm sorry, Davis was not interested in having the argument. And for that reason, defendant did not demonstrate as he suggested in his brief, that they were engaged in mutual combat. Mutual combat is where the parties willingly enter a quarrel on equal terms. Davis was not willing to enter a quarrel. He said, get out of my face, get out of my face, get out of my face. And defendant did not get out of his face. Additionally, one who instigates a quarrel cannot rely upon the victim's response, get out of my face, as evidence of mutual combat. And it's not mutual combat when defendant's response is all out of proportion to the provocation. Defendant brought a gun to a finger fight or a waving of hands argument. Shooting Davis in the face was not proportionate to being poked in the head or being told, get out of my face. Nothing under those circumstances compelled defendant to stay there. He was not confined. He was not being held. He could have walked away. He decided to protect his reputation, to not show his fear by shooting the victim in the face. Under the circumstances of this case, Griffin and Starnes testimony would not have entitled defendant to a self-defense instruction, nor a second degree murder instruction. And this court's, another panel of this court's finding that the petition stated the gist of a claim and could be advanced to the second stage does not indicate otherwise. Counsel repeatedly said that that court said that under the circumstances with that testimony from Griffin Starnes, defendant would have been given an instruction. That is not what the court said. I urge this court to review that opinion. The court said it could have entitled him to a self-defense instruction. There is a difference. And at that standard, when the court made that finding, they were not considering the veracity or credibility of the allegations. That petition was advanced. Accepting all the statements is true. And that is not the standard where we are here. We are looking at the credibility. Now, turning to the issue of post-conviction counsel's performance. I apologize, your honor. You're going, you're going quite long. I would ask you to kind of shorten things up. Yes, your honor. Now, regarding the reasonable assistance, when we're looking at the reasonable assistance at third stage, courts use a measure of, courts measure this using the Strickland standard on the basis that the lower reasonable assistance standard is not equivalent to Strickland. So if we can't pass the Strickland standard, we can't meet, I'm sorry, you don't fail the reasonable assistance standard. Now, throughout her representation, the post-conviction counsel, Ms. Calabrese was diligent and everything she did reflected investigation and preparation for the hearing. She filed her witness list with the witness's information. She filed an amended list when she had to add a witness. She attempted to amend the petition, but she was not successful. And defense counsel's representations that she was confused are simply not true. Pages 1085 to 97 of the record clarify this, where she discusses and she clarifies for the ASA actually what occurred and what happened when she tried to amend the petition. The fact that she may have stated at a prior hearing that the case was in this posture because it was advanced from one court versus another is a misstatement. And that is not something that should result in a finding that she was inept or incompetent. As she prepared for this hearing, she contacted witnesses, she obtained transcripts, and she let the court know she needed continuance to do so. She interviewed and obtained an affidavit from Ms. Brown. And the record does show that there was contact prior to her being appointed between the previous APD and Griffin. That was sometime before 2019. It was around 2018, I believe. Now, counsel, current counsel filed a 651C. And critically, on December 20th of 2020, I'm sorry, December 10th of 2020, she filed a motion to relocate Starnes, which demonstrates that she was no longer in contact with him. Following that, she had her witnesses prepared and present for trial on four separate occasions. And those witnesses did not include Starnes, which again, suggests that she had not located him. She obtained information about Griffin when he went missing earlier in the proceedings, and she found him. And then she also obtained information when she lost contact again and determined that he was deceased. And after that occurred, she did find or attempt to find other individuals to fill in for the lack of his presence. The fact that she did not subpoena Starnes is based on what the record indicates and shows that she didn't have his information. You can't send a subpoena for someone for whom you don't know their location. You have to have an address to serve him. You have to have someone go out and find him. It's not a matter of let's just go search the entire county. You have to know where he is. She did not have contact with him at that time. And she confirmed that when she was arguing at the conclusion of the hearing when told the court, in the wake of COVID, we simply don't know what happened. We don't know if he's dead or alive. We don't know. This is not a matter of lack of investigation because throughout the entire proceeding, she was investigating everyone and she was very diligent about everything that she did. This is a matter of, as her motion demonstrates, she did not know where he was. She therefore could not have subpoenaed him. And even if she had obtained his presence or sent a subpoena for him, sending a subpoena or giving continuance at the end of the day, even if he had shown up, it would not have cured the infirmities and the credibility determinations. It would not, excuse me, it would not cure the infirmities with the credibility of Brown and his wife. And that was what this case turned on more so than Starnes' presence. The fact that the judge could not conclude based on their information that it was more likely than not that counsel had been informed of Griffin and Starnes. Starnes had no information about whether counsel had been informed of him. There was nothing in his affidavit to suggest that. So even if he had appeared, there was no reasonable probability that the petition would have been advanced or that the court would have had a different outcome. Would you please wrap it up? Yes, your honor. I'm wrapped up. For these reasons today and also the ones that are brief, we would ask you to affirm the dismissal of the petition. Any questions? No questions. Okay, Chris, you may do your thing. Thank you, your honor. Um, quickly in rebuttal, I just need to correct the state. The state's simply wrong as to what trial counsel's testimony was at the evidentiary hearing. I'm reading from 1232. This is the exchange between the prosecutor and Mr. Carey. Question, did you speak to him about potential witnesses in this case to him being Mr. Brown? Carey answers, yes. Did he give you the names of any potential witnesses, plural in this case? Yes. Then counsel says, besides Michael Hall, I can't specifically recall the names of any other witnesses, the names, not that he wasn't given other potential witnesses. He was in regards to the state's, um, windows versus window situation. Um, you know, this is, it's happened in 2005. Our veeraments are happening in 2012 and on how Brown's is happening in 2019. The minor difference between window and windows, if there is even a difference is immaterial. In this case, four witnesses would have testified at trial that a shooting occurred on December 5th, where Jonathan Davis, the decedent in our case shot at someone else right at the marquee room where this all occurred on December 12th. And my client knew about that. So of course that informed his subjective belief as to what he feared for when there's this altercation that's happening between state's witness, Michael Hall and Jonathan Davis, the decedent. And where, I mean, look, if you can look back at the testimony, I'm not going to repeat any of the language that Mr. Davis supposedly used towards Mr. Hall, but it is frankly disgusting. Um, and that of course would have colored Cornelius Brown's actions when he did, unfortunately shoot Mr. Davis on December 12th, of course, had the jury heard about this December 5th shooting, the trial court would have been quiet by case law. State doesn't dispute that if there was slight evidence, the judge would have had to have given such an instruction or erred itself and had a jury gotten that instruction, at least on second degree, there is a reasonable probability. And this court can have no confidence in the outcome, sans the jury receiving the tools to judge Cornelius Brown's justified use of force defense. I mean, the state essentially implicitly concedes that second degree murder, because you said on the occasion, there was no evidence of a firearm by Davis. But of course, we know had the jury heard about the December 5th shooting, there would have been that evidence as to the mind of Cornelius Brown. Just going through my notes here briefly, your honors. And just to turn to the Post-Conviction Council's unreasonable assistance here, the state's forced to admit there's no evidence in the record that they attempted to subpoena, that Post-Conviction Council attempted to subpoena Mr. Starnes. There's also no evidence that Mr. Starnes is deceased like Mr. Griffin. So had he been deceased, that would have been found out just like it was in the Griffin situation. And counsel, of course, knew how to subpoena the documents. You see the subpoena in the record as to the death certificate for Griffin. That's clearly in the record. So she clearly didn't do her job here. And for that reason, whether you reverse the circuit court's denial of the petition to remand for a new trial, or order a new third stage evidentiary hearing because of the unreasonable assistance, remand is required here. And if your honors have no further questions, we rest on our brief. Any questions? You both made a very nice presentation and gave us all the law. So we'll let you know as soon as we reach an agreement. Thank you. Thank you, your honors. Thank you, counsel.